IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SELECTIVE INSURANCE COMPANY<br>OF SOUTH CAROLINA,<br>     Plaintiff, | )<br>)<br>) | |
| vs. | ) | Civil Action No. 11-74 |
| | )<br>) | Magistrate Judge Maureen P. Kelly |
| ANTHONY FERGUSON t/a FERGUSON<br>TREE & STUMP SERVICE,<br>     Defendant. | )<br>)<br>) | [ECF Nos. 29 and 31] |

## OPINION

**KELLY, Magistrate Judge**

  Pending before the Court are the parties' Cross-Motions for Judgment on the Pleadings, (the "Motions") [ECF Nos. 29 and 31] raising the issue of whether Plaintiff, Selective Insurance Company of South Carolina ("Selective" or "Plaintiff"), owes a duty to defend and indemnify Defendant, Anthony Ferguson t/a Ferguson Tree & Stump Service ("Ferguson" or "Defendant") in connection with claims filed against him arising out of an accidental shooting. Both parties have filed briefs in opposition to the Motions. For the reasons set forth below, the Motion for Judgment on the Pleadings filed by Selective is denied, and the Motion for Judgment on the Pleadings filed by Ferguson is granted in part and denied in part.

**I.  FACTUAL AND PROCEDURAL HISTORY**

  Selective initiated this diversity action by filing a Complaint for Declaratory Judgment (the "Complaint"). [ECF No. 1]. Selective seeks a declaration pursuant to 28 U.S.C. §§ 2201, et. seq., that it does not owe coverage under a commercial general liability policy issued by it to Ferguson with regard to a civil action filed against Ferguson in the Court of Common Pleas of

1

Allegheny County, Pennsylvania. The case, captioned <u>Lawrence Stevens v. Anthony Ferguson t/d/b/a Ferguson Tree and Stump Service</u>, was filed at Docket No. GD-10-16470, by Lawrence Stevens ("Stevens"). The Stevens action arises out of injuries that Mr. Stevens sustained as a result of an alleged accidental discharge of a firearm on or about September 5, 2009, at Ferguson's residence and place of business.[1] The Stevens Complaint alleges that in the course of repairing business equipment, Ferguson went into his house to obtain a mirror to use for the repairs. As he emerged from the house with a mirror, he also carried a .357 revolver which he believed was unloaded. The Stevens Complaint further alleges that "[a]s Mr. Ferguson negligently pointed the revolver towards Mr. Stevens, the gun accidentally fired and the bullet struck Mr. Stevens in the chest." [ECF No. 1-2, pp. 3-4]. Mr. Stevens suffered severe and permanent injuries, including paraplegia, as a result of the incident, which is alleged to have been caused by Ferguson's negligence in handling a loaded revolver. <u>Id.</u>

Upon receipt of the Stevens claim for defense and indemnification, Selective issued a reservation of rights letter, reserving its rights to deny coverage under the terms of the policy, and appointed counsel to defend Ferguson. [ECF No. 1, p. 4]. Subsequently, Selective commenced this action disputing any obligation to provide coverage to indemnify or defend Ferguson under the terms of the commercial liability policy at issue. Selective now seeks the entry of judgment in its favor, contending that, as a matter of law, it is entitled to a declaration that it does not owe coverage for the Stevens claim. Selective points to the insuring agreement as well as the definition of "insured" in the policy as limiting the grant of coverage to business related activities only:

---

[1] Selective's reservation of rights letter, attached as Exhibit 4 to its Complaint, indicates that the incident occurred on a weekend at Ferguson's home, where his business equipment was apparently stored and maintained. [ECF No. 1-4, p. 2]. Ferguson does not contest this assertion.

2

SECTION I – COVERAGES

COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABLITY

1. Insuring Agreement

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply….

SECTION II – WHO IS AN INSURED

1. If you are designated in the Declarations as:

   a. An individual, you and your spouse are insureds, *but only with respect to the conduct of a business of which you are the sole owner* ….

[ECF No. 1-3, p. 60 (emphasis supplied)]. Selective contends that in purchasing the subject policy, Ferguson represented that he was seeking coverage for his lawn maintenance and stump removal business. Because the stump removal business "does not involve the sale, servicing or handling of handguns, …" Selective argues, "Ferguson's utilization of the handgun on the date of the accident has no relationship to the conduct of his business." Therefore, according to Selective, Ferguson is not "an insured" as defined by the policy and no coverage is due for the claim. [ECF No. 1, pp. 5, 6].

Ferguson counters, and moves for Judgment on the Pleadings, asserting Selective owes him a duty to defend and a duty to indemnify because he was carrying both the gun *and* the mirror to repair business equipment at the time the weapon discharged. Thus, according to Ferguson, he "was clearly an insured … in that he was engaged in the conduct of his business at

3

the time of the loss." [ECF No. 32, p. 6]. Ferguson argues that the language of the insuring agreement does not require a causal relationship between the injury and the "conduct of a business;" but, instead, a temporal relationship.[2] [ECF No. 32, p. 8]. Finally, Ferguson contends that because both parties have provided different interpretations for the "conduct of business" clause, it is ambiguous and should be construed in his favor.

## II. STANDARD OF REVIEW

A motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) may be granted "where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988) (citation omitted). Where, as here, a motion for judgment on the pleadings requires assessment of the merits, the Court uses the same standard as it would in considering a motion for summary judgment. See, e.g., Alexander v. City of Chicago, 994 F.2d 333, 336 (7th Cir. 1993); Broadcom Corp. v. Agere Sys. Inc., Civ. Act. No. 04-2416, 2004 WL 2009320 at * 1 n. 3 (E.D. Pa. Sept. 8, 2004).[3] Thus, the Court cannot grant the parties' cross-motions for judgment on the pleadings unless it finds that either party has clearly established that: (1) there

---

[2] Ferguson argues, "[the policy] only requires that the accident occur while the insured is conducting his business (maintaining and repairing his equipment)." Ferguson further contends, "There is nothing in the language of this provision [definition of insured] which restricts or requires that the occurrence or accident itself determines (sic) whether or not Mr. Ferguson is insured for the loss. Rather, it is determined by whether or not he was engaged in his business at the time of the accident." [ECF. No. 31, p. 8].

[3] The one significant difference between resolution of Rule 12(c) and Rule 56 motions is the fact that in deciding Rule 12(c) motions, the Court does not consider matters outside the pleadings. Mele v. Fed. Reserve Bank of N.Y., 359 F.3d 251, 257 (3d Cir. 2004). It may, however, take into account matters of public record, orders and exhibits attached to the complaint. See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (clarifying that court may take into account undisputedly authenticated documents integral to or explicitly relied upon in the complaint or attached as exhibits to the motion to dismiss) (citations omitted); Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (same); 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. 2004). Fed.R.Civ.P. 12(c) provides, however, that "[i]f, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." In this case, the Court considers only the pleadings and the attachments thereto, which include the underlying Stevens complaint, the Selective reservation of rights letter, and the terms of the insurance policy.

4

are no material issues of fact; and (2) it is entitled to judgment as a matter of law. DiCarlo v. St. Mary Hosp., 530 F.3d 255, 259 (3d Cir. 2008). In evaluating the evidence, the Court must consider all facts and their reasonable inferences in the light most favorable to the opposing party. See Treesdale, Inc. v. TIG Ins. Co., 681 F. Supp.2d 611, 615-616 (W.D. Pa. 2010), *citing*, Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).

## III. DISCUSSION

In this diversity action, the parties implicitly agree that Pennsylvania substantive law applies.[4] Erie R. Co. v. Tompkins, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L. Ed. 1188 (1938). Pennsylvania law provides that the "'interpretation of an insurance contract regarding the existence or non-existence of coverage is generally performed by the court.'" Gardner v. State Farm Fire and Cas. Co., 544 F.3d 553, 558 (3d Cir. 2008), *quoting* Donegal Mut. Ins. Co. v. Baumhammers, 595 Pa. 147, 938 A.2d 286, 290 (Pa. 2007). In interpreting an insurance policy, it is the Court's duty to determine the intent of the parties "as manifested by the language of the written agreement." Travelers Cas. & Sur. Co. v. Castegnaro, 565 Pa. 246, 772 A.2d 456, 459 (2001); 401 Fourth St., Inc. v. Investors Ins. Group, 583 Pa. 445, 879 A.2d 166, 171 (2005) (*citing* Gene & Harvey Builders, Inc. v. Pa. Mfrs.' Assoc. Ins. Co., 512 Pa. 420, 517 A.2d 910, 913 (1986)). In construing the terms of an insurance policy, the court must read the policy in its entirety, giving effect to all the policy's language. See also 401 Fourth St., Inc., 879 A.2d at 171 (noting that the court must not consider "merely individual terms utilized in the insurance contract, but the entire insurance provision to ascertain the intent of the parties").

When construing the language of a policy, the court is also required to give effect to the reasonable expectations of the insured. Reliance Ins. Co. v. Moessner, 121 F.3d 895, 903 (3d Cir.

---

[4] Selective's Complaint for Declaratory Judgment alleges that it is an Indiana corporation, with its principal place of business in New Jersey. Ferguson is a resident of Bulgar, Pennsylvania. [ECF No. 1, pp. 1-2].

5

1997). "An insured, however, may not complain that its reasonable expectations have been frustrated when the applicable policy limitations are clear and unambiguous." Millers Capital Ins. Co. v. Gambone Bros. Dev. Co., Inc., 941 A.2d 706, 717 (Pa. Super. 2007) (*citing* Bubis v. Prudential Prop. & Cas. Ins. Co., 718 A.2d 1270, 1272 (Pa. Super. 1998)).

When the language of the insurance policy is clear and unambiguous, the court must give effect to that language. Baumhammers, 938 A.2d at 290 (*citing* Kvaener Metals Div. v. Commercial Union Ins. Co., 908 A.2d 888, 893 (Pa. 2006)); *and see* O'Conner- Kohler v. United Servs. Auto. Ass'n, 883 A.2d 673, 679 (Pa. Super. 2005), *quoting* Steuart v. McChesney, 444 A.2d 659, 661 (Pa. 1982) ("[w]hen a written contract is clear and unequivocal, its meaning must be determined by its contents alone"). "However, 'when a provision in the policy is ambiguous, the policy is to be construed in favor of the insured to further the contracts [sic] prime purpose of indemnification and against the insurer, as the insurer drafts the policy and controls coverage.'" Baumhammers, 938 A.2d at 290.

An ambiguity exists in the policy language when there is more than one possible interpretation or "'if it is reasonably susceptible of different constructions and capable of being understood in more than one sense.' " 401 Fourth St., 879 A.2d at 171. The language of the insurance policy should not be tortured to create an ambiguity. An ambiguity will not exist merely because the parties do not agree on construction, rather "[c]ourts should read policy provisions to avoid an ambiguity if possible." O'Conner-Kohler, 883 A.2d at 680 (*citing* Neuhard v. Travelers, 831 A.2d 602, 604-05 (Pa. Super. 2003)). "'The polestar of our inquiry, therefore, is the language of the insurance policy.'" Id. at 679.

In determining whether the insurer has a duty to defend the underlying action, the court must compare coverage afforded under the policy to the factual allegations contained in the four

corners of the underlying complaint. Mut. Benefit Ins. Co. v. Haver, 725 A.2d 743, 745 (Pa.1999); Erie Ins. Exch. v. Claypoole, 673 A.2d 348, 355 (Pa. Super. 1996) ("In such actions, the allegations raised in the underlying complaint alone fix the insurer's duty to defend."). Notably, the claim pled in the underlying complaint does not determine whether coverage has been triggered. "Instead, it is necessary to look at the factual allegations contained in the complaint." Haver, 725 A.2d at 745 (citing Scopel v. Donegal Ins. Co., 698 A.2d 602 (Pa. Super. 1997)); Aetna Cas. & Surety Co. v. Roe, 650 A.2d 94, 98 (Pa. Super. 1994)). The insurer owes a duty to defend if the complaint alleges facts which would potentially bring the claim within the policy's coverage, if true. Erie Ins. Exch. v. Muff, 851 A.2d 919, 926 (Pa. Super. 2004). If the factual averments in the underlying complaint trigger coverage, then the insurer has a duty to defend "until such time that the claim is confined to a recovery that the policy does not cover." Allen, 692 A.2d at 1095; and see Allstate Ins. Co. v. Brown, 834 F. Supp. 854, 857 (E.D. Pa.1993) (citing United Servs. Auto. Assoc. v. Elitzky, 517 A.2d 982, 985 (Pa. Super. 1986) (holding that, "so long as the complaint comprehends an injury which is potentially within the scope of the policy, the company must defend the insured until the insurer can confine the claim to a recovery that the policy does not cover")).

Accordingly, to determine whether Selective has a duty to defend Ferguson in the Stevens litigation, the language of the policy must be compared with the factual allegations contained in the four corners of the Stevens complaint. In pertinent part, the Stevens complaint alleges:

> 3. On or about September 5, 2009, Mr. Ferguson was maintaining and repairing equipment used for Mr. Ferguson's tree stump removal business located at 785 Joffre Bulger Road, Bulgar, PA. Mr. Stevens and other individuals were present at this time.
>
> 4. While working on the business equipment, Mr. Ferguson went into the

> house to obtain a mirror to use during the aforesaid repairs and maintenance. As Mr. Ferguson emerged from the house with a mirror, he also carried a .357 revolver, which Mr. Ferguson believed was unloaded.
>
> 5. As Mr. Ferguson negligently pointed the revolver towards Mr. Stevens, the gun accidentally fired and the bullet struck Mr. Stevens in the chest.
>
> 6. The aforesaid accident was caused by the negligence of Defendant, Anthony Ferguson, in the following particulars:
>
>    a. In having a loaded revolver on the premises;
>    b. In failing to insure that the revolver was unloaded;
>    c. In failing to properly handle the revolver;
>    d. In negligently handling the revolver;
>    e. In negligently pointing the revolver at Mr. Stevens; and
>    f. In negligently discharging the weapon.

[ECF No. 1-2, pp. 3-4]. As set forth *supra*, the policy provides coverage for "those sums that the insured becomes legally obligated to pay as damages because of bodily injury." [ECF No. 1-3, p. 52]. An "insured" is "[a]n individual, you and your spouse … *but only with respect to the conduct of a business* of which you are the sole owner," and, not surprisingly, the conflict between the parties turns on this phrase. [ECF No. 1-3, p. 60 (emphasis added)]

Selective seeks a narrow interpretation, contending that the phrase provides coverage only for specific activities related to the business of stump grinding or landscape work. Ferguson seeks a much broader interpretation, contending that so long as some tangential business was being conducted at the time of the accident, the policy provides coverage, regardless of whether the alleged negligent act was work-related. Both extremes fail to reflect the language of the policy. The phrase "but only with respect to the conduct of a business" requires a logical causal connection between the alleged negligent acts and the business of the named insured.

"Conduct of business" is not defined in the policy; however, words of common usage in an insurance policy are to be construed in their natural, plain and ordinary sense, and resort to the

dictionary meaning is appropriate to inform understanding of the term.  Madison Construction Co. v. Harleysville Mt. Ins. Co., 735 A.2d 100, 108 (Pa. 1999).  "Conduct" is defined, in pertinent part as, "the act, manner, or process of carrying on."  Webster's New Collegiate Dictionary (1981).   Coverage under the policy therefore requires that the negligent act for which coverage is sought be with respect to the "carrying on" of the insured's business.  It is certainly conceivable that a weapon could be retrieved and displayed in the "carrying on" of the insured's business.  For example, if the insured displayed the weapon in order to protect either business property or employees from an imminent or perceived threat, the alleged negligence may be related to the conduct of his business.   Similarly, if the insured was carrying the weapon to a business vehicle to place in the vehicle for protection of the business, the alleged claim may be covered.  However, if the weapon were displayed to friends who had stopped by Ferguson's home for a social visit to "show off" a new purchase, the alleged negligence may have no relationship to the conduct of the business and not be within the coverage of the policy.

Ferguson points to the fact that he was carrying a mirror to look at a machine at the time the gun accidentally discharged to establish that he was acting with respect to the conduct of his business at the time of the accident.   The negligence alleged in the Complaint, however, is not with regard to his handling of the mirror, but with regard to his handling of the weapon.  It is *this* alleged negligence that allegedly caused the injury and therefore *this* claim that controls the determination of coverage.  As framed by the Complaint, for Ferguson to be an insured regarding Stevens' injury, his negligence in handling the weapon must have a relationship to his business operations.

Pennsylvania cases construing somewhat similar language in commercial liability policies have required a causal nexus between the cause of the injury and the insured operations

9

or business. Simply stated, if the negligence which caused the injury was occasioned by and related to the business operations, coverage is afforded.

In Leggett v. National Union Fire Ins. Co. of Pittsburgh, Pa., 844 A.2d 575 (Pa. Super. 2004), *aff'd* 874 A.2d 1159 (Pa. 2005), the court concluded that coverage was afforded under an employer's umbrella policy to an employee who spent much of his day off on personal errands with his sons, but whose alleged negligence in the operation of a motor vehicle occurred while returning from a trip to locate his company-owned cell phone, which had been misplaced earlier in the week. The policy limited coverage to employees "but only while acting within their duties." The court determined that the employee had a "duty" to find his company-owned cell phone. Accordingly, his alleged negligent use of his automobile was job-related, rendering him insured for purposes of the accident. Id. 577-578.

At this early stage of the litigation, it is not yet apparent whether Ferguson's handling of the weapon had a business-related purpose, but clearly a causal connection between the two is required for coverage. See, also, Tuscarora Wayne Mut. Ins. Co. v. Kadlubosky, 889 A.2d 557, 563 (Pa. Super. 2005) (where the grant of coverage under a commercial property insurance policy is limited to activities "arising out of" the insured premises, there must be a causal connection between the maintenance or use of the insured premises and the underlying incident), *citing* Erie Ins. Exchange v Eisenhuth, 451 A. 2d 1024, 1025-1026 (Pa. Super 1982)(where policy insured vehicle, there must be some causal connection between the harm done and the use of the insured vehicle, thus no coverage where injury occurred while sitting in vehicle but cause of injury was a gunshot).

Employing a similar analysis in this case, a causal connection is required between Ferguson's negligent handling of the gun and his insured landscaping business. Given the sparse

allegations in the Stevens complaint and the early stages of the litigation, the issue of causation cannot be resolved as a matter of law. The Stevens complaint, however, does allege sufficient facts that could potentially bring the claim within the policy's coverage. Selective, therefore, owes a duty to defend Ferguson in the Stevens action. It is premature for this Court to address whether Selective has an obligation to indemnify Ferguson, as a judgment has yet to be entered in the Stevens litigation and the facts concerning Ferguson's display and handling of the weapon on the day of the accident have not yet been determined. Nationwide Mut. Fire Co. v. Shank, 951 F. Supp. 68, 71 (E.D. Pa. 1997), *appeal dismissed*, 127 F.3d 1096 (3d Cir. 1997) (deferring analysis of duty to indemnify pending resolution and trial of facts in state court proceeding).

## IV.   CONCLUSION

For the foregoing reasons, Selective's Motion for Judgment on the Pleadings is DENIED and Ferguson's Motion for Judgment on the Pleadings is GRANTED in part, to the extent the Court finds Selective owes a duty to defend Ferguson in the Stevens action, but is DENIED without prejudice with regard to Selective's duty to indemnify. An appropriate Order will follow.


Dated: October 3, 2011

/s/   MAUREEN P. KELLY
United States Magistrate Judge

cc:   All counsel of record via CM/ECF