IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SELECTIVE INSURANCE COMPANY OF SOUTH CAROLINA, <br>     Plaintiff, <br><br> vs. <br><br> ANTHONY FERGUSON trading as FERGUSON TREE & STUMP SERVICE; <br>     Defendant, <br><br> LAWRENCE STEVENS, <br>     Intervenor Defendant, <br><br> ANTHONY FERGUSON, <br>     Counter-Claimant, <br><br> vs. <br><br> SELECTIVE INSURANCE COMPANY OF SOUTH CAROLINA, <br>     Counter-Defendant. | Civil Action No. 11-74 <br> Magistrate Judge Maureen P. Kelly <br><br><br><br><br> [ECF Nos. 53, 59 and 70] |

## **OPINION**

**KELLY, Magistrate Judge**

Pending before the Court are two motions by Selective Insurance Company ("Selective" or "Plaintiff"); first, a Motion for Leave to Amend Complaint [ECF No. 70] and second, a Motion for Summary Judgment [ECF No. 59]. Also pending is a Motion for Summary Judgment filed by Intervenor Defendant Lawrence Stevens ("Stevens" or "Intervenor").

Selective's original Complaint, filed on January 19, 2011, seeks a declaration that coverage is not afforded to Defendant Anthony Ferguson, t/a Ferguson Tree & Stump Service ("Ferguson" or "Defendant") under the terms of a comprehensive general liability policy, for injuries sustained by Stevens in an accidental shooting. [ECF No. 1]. Selective now seeks to amend its complaint to add additional policy defenses, which it asserts it could not have known

1

were implicated until discovery was nearly complete. Selective also moves the Court for the entry of summary judgment in its favor as a matter law as to Ferguson's state law claim for bad faith claims handling. In addition, Selective moves for the entry of summary judgment in its favor as a matter of law with regard to the asserted absence of coverage under the policy for the accidental shooting. Neither Ferguson nor Stevens oppose the motion for summary judgment as to the bad faith claim; however, Stevens seeks the entry of judgment in favor of Defendants Ferguson and Stevens as to the existence of coverage under the policy for Stevens' injuries, contending that discovery conducted to dates establishes Ferguson's entitlement to coverage as a matter of law.

For the following reasons, the Motion for Leave to Amend the Complaint [ECF No. 70] is denied; Selective's Motion for Summary Judgment [ECF No. 59] is granted in part with regard to the state law bad faith claim, but is denied as to all other claims; and Steven's Motion for Summary Judgment [ECF No. 53] is denied.

I. **FACTUAL AND PROCEDURAL BACKGROUND**

Selective initiated this diversity action by filing a Complaint pursuant to 28 U.S.C. §§ 2201, et. seq., seeking a declaration that it does not owe coverage to its insured, Anthony Ferguson, with regard to a civil action filed against Ferguson in the Court of Common Pleas of Allegheny County, Pennsylvania (the "Stevens Complaint"). [ECF No. 1]. The lawsuit, <u>Lawrence Stevens v. Anthony Ferguson t/d/b/a Ferguson Tree and Stump Service</u>, arises out of injuries that Stevens sustained as a result of an alleged accidental discharge of a firearm on or about September 5, 2009, at Ferguson's residence and place of business. The Stevens Complaint alleges that in the course of repairing business equipment, Ferguson went into his house to obtain a mirror to use for the repairs. As he emerged from the house with a mirror, he also carried a

.357 revolver which he believed was unloaded. The Stevens Complaint further alleges that "[a]s Mr. Ferguson negligently pointed the revolver towards Stevens, the gun accidentally fired and the bullet struck Mr. Stevens in the chest." [ECF No. 1–2, pp. 3–4]. Mr. Stevens suffered paraplegia, as well as other severe and permanent injuries, all of which are alleged to have been caused by Ferguson's negligence in handling a loaded revolver. Id.

Upon receipt of Ferguson's claim for defense and indemnification, Selective issued a reservation of rights letter, reserving its rights to deny coverage under the terms of the policy, and appointed counsel to defend Ferguson. [ECF No. 1, p. 4]. Subsequently, Selective commenced this action against Ferguson, disputing any obligation to provide coverage to indemnify or defend him under the terms of the commercial liability policy at issue.

On August 4, 2011, this Court entered a Case Management Order, requiring the filing of any amended pleadings and the joinder of any additional parties to be completed by September 30, 2011. Cross-Motions for Judgment on the Pleadings were to be filed by August 19, 2011, and discovery as to Selective's policy defenses, as well as depositions of Ferguson and Stevens were to be completed by August 31, 2011. [ECF No. 27]. On August 19, 2011, both Selective and Ferguson filed cross-motions for judgment on the pleadings [ECF Nos. 29, 31]. Ferguson's Motion for Judgment on the Pleadings [ECF No. 31] was granted in part, and the Court held that the allegations of the Complaint and the terms of the policy at issue gave rise to a duty to defend Ferguson in the underlying Stevens action. However, the Court denied both parties' cross-motions with regard to Selective's duty to indemnify, based upon the apparent existence of material issues of fact as to Ferguson's asserted business purpose in carrying the gun at the time of the accident. [ECF No. 39].

Prior to the entry of this Court's Order as to the cross-motions for judgment on the pleadings, Selective entered into an agreement with Stevens to pay him $350,000, with a potential payment of the policy limits in the event this declaratory judgment action results in a finding of coverage under the policy. [ECF No. 73, p.2].

The policy at issue provides Ferguson coverage as to business related activities:

**SECTION I—COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE**

**LIABLITY**

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply....

**SECTION II—WHO IS AN INSURED**

1. If you are designated in the Declarations as:

a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner ....

[ECF No. 1-3, p. 60].

Each party asserted that coverage under the policy could be determined solely by resolving whether Ferguson's handling of the weapon was related to his business operations. As summarized in this Court's earlier Opinion:

> Selective contends that in purchasing the subject policy, Ferguson represented that he was seeking coverage for his lawn maintenance and stump removal business. Because the stump removal business "does not involve the sale, servicing or handling of handguns, ..." Selective argues, "Ferguson's utilization of the handgun on the date of the accident has no relationship to the conduct of his

> business." Therefore, according to Selective, Ferguson is not "an insured" as defined by the policy and no coverage is due for the claim. [ECF No. 1, pp. 5, 6].
>
> Ferguson counters, and moves for Judgment on the Pleadings, asserting Selective owes him a duty to defend and a duty to indemnify because he was carrying both the gun and the mirror to repair business equipment at the time the weapon discharged. Thus, according to Ferguson, he "was clearly an insured ... in that he was engaged in the conduct of his business at the time of the loss." [ECF No. 32, p. 6]. Ferguson argues that the language of the insuring agreement does not require a causal relationship between the injury and the "conduct of a business;" but, instead, a temporal relationship.

Selective Ins. Co. of S. Carolina v. Ferguson, CIV.A. 11-74, 2011 WL 4626007 (W.D. Pa. Oct. 3, 2011).

This Court conducted a detailed review of the language of the policy at issue and the relevant case law and determined that the grant of coverage is limited to activity "with respect to the conduct of a business." This limitation requires a logical causal connection between the alleged negligent acts and the business of the named insured. [ECF No. 37, p. 8]. Because the alleged negligent acts were with regard to the handling of the weapon, "for Ferguson to be an insured regarding Stevens' injury, his negligence in handling the weapon must have a relationship to his business operations." Id. Given the early stages of the litigation, and the sparse allegations in the pleadings, the Court denied the parties' cross-motions for judgment on the pleadings. Id.

The Court conducted a status conference on January 23, 2012, and counsel for Selective advised that the only discovery necessary was Ferguson's deposition, so that Selective could inquire into the connection, if any, between Ferguson's handling of the weapon at the time of the accident and his business. [ECF No. 48]. During the course of his deposition, Ferguson stated that he picked up the gun while retrieving the mirror so that he could place the gun in his truck for protection at his next landscaping job, as he anticipated being paid in cash and was concerned

5

for his safety. [ECF 61-5, pp. 21 – 26, 30]. When asked why he did not reveal the business related purpose during the initial investigation, Ferguson stated that he was concerned he could be charged with a criminal offense because the gun was not registered in his name, but belonged to a friend who had given it to him as collateral for a loan. Ferguson admitted he did not know if the gun was loaded, and had not purchased bullets for it, but intended to place the gun in the truck's glove compartment after assisting with the repair of the driver's side door. Id.

Ferguson testified that he retrieved the gun and mirror from his house, placed the gun in his waistband, and went outside. [ECF No. 61-5]. After handing the mirror to a friend who was helping with the truck repairs, Ferguson walked approximately 25 feet away from the truck and took the gun from his waistband. [ECF No. 61-5, pp. 29 – 32]. Ferguson testified that he didn't know if he "pulled [the gun] out to show somebody before … put[ting] it in the truck," but he recalls that he was standing 20 – 25 feet away from the truck, and that he had walked away from the truck after handing off the mirror. [ECF No. 61-5, pp. 33-35]. Ferguson also testified that while he has taken other guns to job sites, he has never had to use or draw a gun for protection, but felt more secure having a gun with him when being paid in cash. [ECF No. 61-5, pp. 35 – 36, 43].

Selective indicates that this testimony connecting the gun to a business purpose is incredible, given Ferguson's prior statements to insurance company representatives, the police and his girlfriend, to whom he had indicated that he "didn't know" why he had taken the gun out of his dresser drawer. Ferguson denies the insinuation that he is belatedly fabricating a business related purpose, and explains the inconsistency with his prior statements on his fear of criminal charges for possessing and discharging a weapon that was not registered in his name. [ECF No. 61-5, pp. 34 – 37].

6

Selective contends that Ferguson's deposition testimony implicates a policy exclusion for activities related to loading and unloading automobiles. Selective seeks to amend its Complaint to add this exclusion as a defense to the action and to join Ferguson's automobile insurer, State Farm, contending that coverage for the accidental shooting should fall under Ferguson's auto policy. Selective also moves to amend the complaint to add a policy exclusion for employment related injuries on the speculative chance that Stevens was employed by Ferguson at the time of the accident. The third provision Selective seeks to assert at this time is the policy "cooperation clause" which Selective believes entitles it to avoid coverage for the accident based upon the inconsistencies in Ferguson's statements immediately after the accident and in his deposition two years later. With regard to the asserted policy defenses, the Selective policy provides as follows:

**2. Exclusions**

This Insurance does not apply to:

**d. Workers' Compensation and Similar Laws**

Any obligation of the insured under a Workers' Compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business. . .

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay

7

>damages because of the injury. This exclusion does not
>apply to liability assumed by the insured under an "insured
>contract".

>> **g. Aircraft, Auto or Watercraft**
>>
>> "Bodily injury" or "property damage" arising out of the ownership,
>> maintenance, use or entrustment to others of any aircraft, "auto" or
>> watercraft owned operated by or rented or loaned to any insured.
>> Use includes operation and "loading or unloading."

The policy defines "loading or unloading":

> **11. "Loading or unloading"** mean the handling of property
>
> a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";
>
> b. While it is in or on an aircraft, watercraft or "auto"; or
>
> c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;
>
> but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

[ECF No. 1-3, pp. 55, 65]. Selective further moves to amend its Complaint to include the Selective policy conditions of coverage as to an insured's "duties" in the event of an occurrence:

> c. You and any other involved Insured must:
>
> (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"

In response to Selective's Motion to Amend Complaint to assert new policy defenses, Stevens argues that the Motion, filed over seven months after the close of discovery, should be denied as untimely and in bad faith with dilatory motives. Stevens also contends that because the incident had no connection to the use of an auto, the proposed amendment is futile and

8

alternatively, would require the reopening of discovery to determine the application of the exclusion to this action and Ferguson's reasonable expectations as an insured under the policy. Finally, with regard to State Farm, Stevens asserts that under applicable law, coverage for an accidental shooting would not be found under the automobile policy, rendering Selective's proposed addition of State Farm both frivolous and futile.

## II. DISCUSSION

### A. Motion to Amend Complaint

Generally, leave to amend a complaint will not be granted if the amendment would be inequitable or futile. Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir.2002) (reversing district court for failing to grant plaintiff right to amend when the district court did not specifically find that granting leave to amend would be inequitable or futile). Permitting amendment is consistent with Rule 15(a) of the Federal Rules of Civil Procedure, which provides "leave [to amend] shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). A court, however, may decide to deny leave to amend for reasons such as undue delay, bad faith, dilatory motive, prejudice, and futility. Hogan v. Raymond Corp., 777 F. Supp. 2d 906, 912 (W.D. Pa. 2011); Swift v. McKeesport Housing Auth., 726 F. Supp.2d 559, 567 (W.D. Pa. 2010) *(citing* In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997)).

Delay alone will not constitute grounds for denial. Cureton v. National Collegiate Athletic Ass'n, 252 F.3d 267, 273 (3d Cir. 2001). The district court has discretion to deny the request only if the plaintiff's delay in seeking to amend is undue, motivated by bad faith, or prejudicial to the opposing party, or where it fails to state a cause of action. Adams v. Gould Inc., 739 F.2d 858, 863-4 (3d Cir. 1984), *cert. denied*, 469 U.S. 1122 (1985). Delay becomes "undue," and thereby creates grounds for the district court to refuse leave, when it places an

unwarranted burden on the court or when the plaintiff has had previous opportunities to amend. Cureton, 252 F.3d at 273 (*citing* Adams, 739 F.2d at 868; Lorenz v. CSX Corp., 1 F.3d 1406, 1414 (3d Cir. 1993)). Moreover, in determining the existence of prejudice, the Court is to consider whether allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or new theories. Id. Review of the question of undue delay will "focus on the movant's reasons for not amending sooner," Cureton, 252 F.3d at 273, and balancing these reasons against the burden of delay on the District Court and opposing parties. Coventry v. U.S. Steel Corp., 856 F.2d 514, 520 (3d Cir. 1988); Bjorgung v. Whitetail Resort, LP, 550 F.3d 263, 266 (3d Cir. 2008).

In this case, it is apparent that the delay resulted from Selective's litigation strategy and its confidence in an extremely narrow interpretation of the policy language granting coverage. In particular, while Stevens' Complaint alleges a business relationship between the weapon and the accident, Selective initially sought to disclaim coverage on the sole theory that handling a weapon could not have a relationship to a landscaping business. Accordingly, rather than engage in discovery in early 2011 by propounding interrogatories to Ferguson or scheduling his deposition, Selective sought judgment on the pleadings on a single theory. Subsequently, when the Court entered its case management order, Selective opted again to delay discovery into Ferguson's conduct on the day in question until *after* the scheduled close of discovery, and until a time shortly before Motions for Summary Judgment were due. It is clear that had Selective propounded discovery earlier in this litigation, it could have determined the facts surrounding Ferguson's alleged business-related decision to carry the gun out of his house and the case management order could have been abided so as to resolve this matter in a timely fashion.

10

Moreover, Selective's decision to raise new policy defenses at this late date, in conjunction with the parties' cross-motions for summary judgment, is extremely prejudicial as it would require reopening discovery to determine not only the existence of other evidence as to Ferguson's intent and habit, if any, of carrying a weapon for protection at certain jobsites, but also Selective's own interpretation of the "loading and unloading" provisions of the policy. Given the evidence that Ferguson was physically oriented away from the truck, having walked some 25 feet back toward his house, evidence of Selective's past interpretations of the exclusion are relevant to determine its own view of the breadth of the language at issue and whether it applies to the Stevens incident. In addition, discovery would need to be conducted to determine the existence of an employment relationship between Stevens and Ferguson, so as to determine the applicability of the policy exclusion for employment related injuries. As a result, this Court finds that allowing amendment at this late stage would be inequitable, cause undue delay, and is futile. In addition, leave to amend is denied based on this Court's concern that the late requests to amend may be caused by a dilatory motive.

For the same reason, it is unduly prejudicial to allow Selective to join State Farm at this time and litigate the applicability of Ferguson's auto policy to the accident at issue. The addition of a new party will require significant additional discovery and the retaking of Ferguson's deposition to pursue a theory can be described as tangential at best, and that has little likelihood of success. *See, e.g.*, Agway Ins. Co. v. Goodville Mut. Cas., 48 F. App'x 37, 38 (3d Cir. 2002), *citing,* State Auto. Ins. Ass'n v. Kuhfahl, 364 Pa. Super. 230, 527 A.2d 1039, 1043-1044 (1987) (pursuant to Pennsylvania law, where a vehicle is "merely incidental" to the accident, it is not in "use" within the meaning of the policy); *and see*, Allstate Ins. Co. v. Sentry Ins., 563 F. Supp. 629, 635 (E.D. Pa. 1983), aff'd, 729 F.2d 1445 (3d Cir. 1984) (unless the vehicle is an active

factor in the operation or there is a connection between the use of the vehicle and the accident, the "loading and unloading" clause will not, under Pennsylvania law, cover the accident). Accordingly, Selective's Motion to Amend Complaint is denied.

### B. Cross-Motions for Summary Judgment

A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (*quoting* First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 289 (1968)). To defeat a motion for summary judgment, the nonmoving party must present "specific facts showing that there is a genuine issue for trial." Matsushita, 475 U.S. at 587 (internal quotation marks omitted). The nonmoving party must show more than "[t]he mere existence of a scintilla of evidence" for elements on which it bears the burden of production, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, (1986), and may not "rely merely upon bare assertions, conclusory allegations or suspicions," Fireman's Ins. Co. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982). By the same token, "it is inappropriate to grant summary judgment in favor of a moving party who bears the burden of proof at trial unless a reasonable juror would be compelled to find its way on the facts needed to rule in its favor on the law." El v. SEPTA, 479 F.3d 232, 238 (3d Cir. 2007) (footnote omitted). In addition, the mere fact that parties have filed cross-motions for summary judgment "does not mean that the case will necessarily be resolved at the summary judgment stage," because "[e]ach party must still establish that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law." Atl. Used Auto Parts v. City of Philadelphia, 957 F. Supp. 622, 626 (E.D. Pa.

1997).

With particular relevance to the case at issue, when evaluating a motion for summary judgment, the court "is not to weigh the evidence or make credibility determinations." Petruzzi's IGA Supermarkets, Inc. v. Darling–Delaware Co., 998 F.2d 1224, 1230 (3d Cir. 1993). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255.

Under Pennsylvania law, which the parties agree applies here, "[t]he interpretation of the scope of coverage of an insurance contract is a question of law properly decided by the court." Med. Protective Co. v. Watkins, 198 F.3d 100, 103 (3d Cir. 1999). The goal of such interpretation is "to ascertain the intent of the parties as manifested by the language of the written instrument." Standard Venetian Blind Co. v. Am. Empire Ins. Co., 503 Pa. 300, 469 A.2d 563, 566 (Pa. 1983). If the language of the insurance policy "is clear and unambiguous, a court is required to give effect to that language." Id. But, if "a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement." Id.

The insured "bears the initial burden to make a prima facie showing that a claim falls within the policy's grant of coverage." State Farm Fire & Cas. Co. v. Estate of Mehlman, 589 F.3d 105, 111 (3d Cir. 2009). If the insured meets that burden, "the insurer bears the burden of proving the applicability of any exclusions or limitations on coverage, since disclaiming coverage on the basis of an exclusion is an affirmative defense." Koppers Co. v. Aetna Cas. & Sur. Co., 98 F.3d 1440, 1446 (3d Cir. 1996).

As was true with regard to the parties' cross-motions for judgment on the pleadings, this case turns on a determination of Ferguson's credibility and whether a fact-finder, in this case a

jury, believes that he intended to place the gun in his truck to use for protection at his next job site. [ECF No. 37]. His deposition testimony and the inconsistencies in his prior statements, as well as the statements of witnesses to the incident, raise issues of credibility, which are issues of fact that need to be resolved by a jury. Accordingly, due to the issues of credibility, the Court cannot make finding as a matter of law regarding Ferguson's intent and the existence of a causal connection between his negligence in handling the weapon and his business. Therefore, neither party is entitled to summary judgment with respect to Selective's duty to indemnify.

## III. CONCLUSION

For the foregoing reasons, Selective's Motion for Leave to Amend the Complaint [ECF No. 70] is denied; Selective's Motion for Summary Judgment [ECF No. 59] is granted in part with respect to the state law bad faith claim, but is denied as to all other claims; and Steven's Motion for Summary Judgment [ECF No. 53] is denied. An appropriate order follows.

## **ORDER**

AND NOW, this 23rd day of October, 2012, upon consideration of Plaintiff Selective Insurance Company of South Carolina's Motion for Leave to File Amended Complaint [ECF No. 70], and the Motions for Summary Judgment filed by both Plaintiff and Defendant-Intervenor Lawrence Stevens [ECF Nos. 53, 59], and for the reasons set forth in the accompanying opinion, IT IS HEREBY ORDERED,

(1) the Motion for Leave to For Leave to File Amended Complaint is denied; and

(2) the Motion for Summary Judgment filed by Plaintiff is granted with respect to the state law bad faith claim asserted against Plaintiff by Defendant Anthony Ferguson, t/a Ferguson

Tree & Stump Service, but denied with respect to Plaintiff's duty to indemnify Ferguson for the underlying action filed against him by Defendant-Intervenor Stevens; and

(3) the Motion for Summary Judgment filed by Defendant-Intervenor Stevens is denied.

BY THE COURT

/s/ Maureen P. Kelly
MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

cc: All counsel of record via CM/ECF